UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TUSHAR AGRAWAL, et al.,

Plaintiffs,

v.

JOSEPH B. EDLOW, et al.,

Defendants.

Case No. 26-cv-01400-EKL

**ORDER GRANTING MOTION TO DISMISS IN PART**

Re: Dkt. Nos. 7, 11

In this case, the Court must decide whether United States Citizenship and Immigration Services ("USCIS") can perpetually avoid adjudicating the immigration applications of individuals, like the plaintiffs here, who have invested a small fortune into the United States. Congress created the EB-5 visa program to expedite the immigration process for such applicants, and it tasked USCIS to administer that process. Yet, Plaintiffs Tushar Agrawal and Nidhi Jayapalan allege that Defendants have abstained from adjudicating their Form I-485 applications to register permanent residence, which have been pending for more than a year. Plaintiffs allege that USCIS's abstention violates its statutorily conferred duty under the Administrative Procedure Act ("APA") to adjudicate matters before it within a reasonable time. Plaintiffs argue that they have a right to adjudication through the APA and the Due Process Clause and seek an order compelling Defendants to adjudicate their applications. Defendants move to dismiss the complaint, claiming in part that the Court lacks jurisdiction over USCIS's inaction. Mot. to Dismiss, ECF No. 7 ("Motion"). The Court carefully reviewed the parties' briefs and heard argument on July 1, 2026. For the following reasons, the Court GRANTS in part and DENIES in part Defendants' motion.

United States District Court
Northern District of California

## I. BACKGROUND

Defendant USCIS is a sub-agency of the United States Department of Homeland Security responsible for processing and adjudicating immigration applications such as the Form I-485 applications to register permanent residence filed by Plaintiffs. Compl. ¶ 3, ECF No. 1 ("Compl."). Defendant Edlow is the director of USCIS, sued here in his official capacity. *Id.* ¶ 4.

Plaintiffs applied for permanent residence under the Employment-Based Fifth Preference ("EB-5") program, created by Congress as "the Immigrant Investor Program" in the Immigration Act of 1990. *Id.* ¶ 13. The EB-5 program created immigrant visas "for foreign national investors who invest[ed] $1M – or $800k in certain high unemployment or rural areas – in a new commercial enterprise that [would create] at least ten jobs for American workers." *Id.*; *see also* 8 U.S.C. § 1153(b)(5). In March 2022, Congress overhauled the EB-5 process through the EB-5 Reform and Integrity Act of 2022 ("RIA"). Compl. ¶ 14. Applicants can now file a Form I-526E immigrant petition by regional center investor and Form I-485 application concurrently so long as visa numbers are available. *Id*. Per counsel at argument, USCIS first approves a Form I-526E petition and then vets and interviews applicants before it approves a Form I-485 application. Approving a Form I-485 application adjusts the applicant's immigration status, granting them conditional permanent residency in the United States. 8 U.S.C. § 1186b(a)(1). Congress expects EB-5 applications to be adjudicated within 180 days, on average. Compl. ¶ 17; *accord* RIA, Pub. L. No. 117-103, § 106(b)(2), 136 Stat. 49, 1104 (2022). For applicants like Plaintiffs here, Congress shortened the desired average timeline to 120 days. RIA § 106(b)(5).

Plaintiffs, a married couple, are both non-citizens native to India currently residing in Santa Clara County, California. Compl. ¶¶ 1, 2. Before filing a petition or application, Mr. Agrawal "invested $800,000 in a new commercial enterprise located in a USCIS-designated regional center" with the effect of creating "at least 10 jobs for American workers." *Id.* ¶ 22. On February 7, 2025, Mr. Agrawal filed a Form I-526E petition concurrently with his and his wife's Form I-485 applications. *Id.* ¶ 23. USCIS approved the petition on July 29, 2025, identifying Mr. Agrawal's visa classification as "Reserved: RR-6 Rural Principal Regional Center Investor." *Id.* ¶¶ 23, 24. Even though Plaintiffs "complied with every regulatory requirement," *id.* ¶ 43, and visa

numbers were available when Plaintiffs applied, *id*. ¶ 24, Plaintiffs' Form I-485 applications have been pending for over twelve months allegedly "without evidence of any substantive adjudicative progress," *id*. ¶ 45. "USCIS has not provided any timeline or indication as to when these decisions might be made." *Id*. ¶ 40. During this time, Plaintiffs allege that USCIS has adjudicated the applications of similarly situated applicants who applied after them. *Id*. ¶ 47. Plaintiffs further allege that USCIS has neither provided evidence of a rationale for its inaction, *id*. ¶ 45, nor indicated that it will act on the pending applications absent a court order, *id*. ¶ 50.

Plaintiffs allege that they have suffered serious hardships because of USCIS's inaction. Because of the uncertainty over their residential status, Plaintiffs have declined to travel internationally, limiting their ability to attend family events or care for their parents. *Id*. ¶ 27. Plaintiffs also allege difficulty in securing their desired professional opportunities due to their unsettled immigration status. *Id*. ¶¶ 28-30. Furthermore, allegedly because of USCIS's elimination of automatic extensions of employment authorization, *id*. ¶ 33, Plaintiffs fear they may become ineligible for employment in the United States absent approval of their Form I-485 applications, *id*. ¶¶ 35-36. At the motion hearing, Plaintiffs also represented that they have spent approximately $15,000 on processing fees required by USCIS for adjudication.

Plaintiffs allege that there is no administrative, statutory, or regulatory remedy for review under the Immigration and Nationality Act ("INA") or the Code of Federal Regulations to address an applicant in Plaintiffs' circumstances. *Id*. ¶ 9. Rather than a "process [where] individuals could schedule an appointment to speak with a USCIS officer in person at a local office," *id*. ¶ 10, an individual must "call USCIS's customer service, where an officer determines if an in-person appointment is necessary. Then, the individual must stand by for a return [call] anytime . . . over the next 72 hours[ ]. If the call is missed or the individual is driving at the time the call is received, the whole process must be reinitiated," *id*. ¶ 11. As such, Plaintiffs claim that the Court is their only avenue of redress. *Id*. ¶ 12. They seek to compel USCIS to adjudicate their application, alleging violations of the APA, the Mandamus Act, and the Due Process Clause of the Fifth Amendment. Defendants move to dismiss the APA and Mandamus claims for lack of subject matter jurisdiction and the Due Process claim for failure to state a claim.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if the plaintiff fails to demonstrate that the court has subject matter jurisdiction. *Tosco Corp. v. Cmtys. for Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). In ruling on a Rule 12(b)(1) motion that raises a facial attack to subject matter jurisdiction, the court accepts "all factual allegations in the operative complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Searle v. Allen*, 148 F.4th 1121, 1128 (9th Cir. 2025).

### B. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Dismissal is proper when there is a "lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

If the court finds that dismissal is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

United States District Court
Northern District of California

## III. DISCUSSION

Defendants claim that the Court lacks subject matter jurisdiction over the APA and Mandamus claims because the INA strips federal courts of jurisdiction over USCIS's discretionary decisions, including inaction. Additionally, Defendants argue that Plaintiffs fail to state a Due Process claim because they have not alleged a cognizable property interest under the Constitution. The Court addresses the arguments in turn.

### A. The Court Maintains Subject Matter Jurisdiction over USCIS's Inaction

As a threshold matter, courts generally have subject matter jurisdiction to compel agency action under the APA. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The APA provides that a court "shall – (1) compel agency action unlawfully withheld or *unreasonably delayed*." 5 U.S.C. § 706(1) (emphasis added). The word "shall" conveys a mandatory duty. *See Nat. Res. Def. Council, Inc. v. Perry*, 940 F.3d 1072, 1078 (9th Cir. 2019). Thus, absent statutory language indicating otherwise, the APA both empowers and requires a court to compel USCIS to act if the agency's action has been unreasonably delayed. Moreover, because the APA empowers a court to compel agency action when such action is unreasonably delayed, the APA necessarily renders agency inaction subject to judicial review when inaction causes unreasonable delay.[1] *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute . . . [is] subject to judicial review.").

Defendants argue that the INA strips the Court of the jurisdiction it would otherwise have under the APA. Mot. at 4. Defendants invoke the following provision:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review -- (i) any judgment regarding the granting of relief under section . . . 1255 of this title, or (ii) *any other decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security. . . .

8 U.S.C. § 1252(a)(2)(B) (emphasis added). Defendants argue that § 1252(a)(2)(B)(ii) should be read expansively to bar judicial review of USCIS's refusal to adjudicate. Defendants provide two

[1] Plaintiffs additionally argue that the Court has jurisdiction under the Mandamus Act. Because the Court finds that it has subject matter jurisdiction through the APA, it does not reach this issue.

main justifications for this reading. First, they argue that "any other decision or action" should be read to include inaction and indecision. Second, they argue that USCIS's abdication of adjudication constitutes an affirmative decision regarding USCIS's "pace-of-adjudication," which should be exempt from judicial review.

**1. 8 U.S.C. § 1252(a)(2)(B)(ii) does not cover inaction**

**a. The plain text of § 1252(a)(2)(B)(ii)**

The Court begins with the text of the INA to determine the meaning of § 1252(a)(2)(B)(ii). However, the INA does not define the terms "action" or "decision." *Lovo v. Miller*, 107 F.4th 199, 207 (4th Cir. 2024); *see also* 8 U.S.C. § 1101 (listing definitions for the INA). Therefore, the Court interprets these words "consistent with their ordinary meaning at the time Congress enacted the statute because absent contextual evidence that Congress intended to depart from the ordinary meaning of an undefined term, the ordinary meaning of language expresses the legislative purpose." *Trim v. RewardZone USA LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023) (citation modified). To identify the ordinary meaning of "action" and "decision," the Court turns to their dictionary definitions. *See Cheffins v. Stewart*, 825 F.3d 588, 593-94 (9th Cir. 2016) (utilizing dictionary definitions to identify the ordinary meaning of terms within a statute).

The ordinary meanings of "action" and "decision" do not stretch so far as to include their antonyms, "inaction" and "indecision." At the time § 1252(a)(2)(B)(ii) was enacted, Black's Law Dictionary defined "action" as "conduct; behavior, something done; the condition of acting; an act or series of acts." *Action*, *Black's Law Dictionary* (6th ed. 1990). Decision, in turn, meant "a determination arrived at after consideration of facts, and in legal context, law." *Decision*, *Black's Law Dictionary* (6th ed. 1990). By contrast, Merriam-Webster defines inaction as precisely a "lack of action." *Inaction*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/inaction (last visited July 7, 2026). "[W]hile dictionary definitions are not always dispositive, here, they strongly indicate that neither delay nor inaction falls within the ordinary definition of 'decision or action.'" *Lovo*, 107 F.4th at 207 (analyzing the plain meaning of the words "action" and "decision" in the context of 8 U.S.C. § 1182(a)(9)(B)(v), another jurisdiction-stripping statute); *cf. Murphy v. F.D.I.C.*, 38 F.3d 1490, 1501 (9th Cir. 1994)

(declining to read the statutory term "asset" to include its antonym, "liability"). To interpret "action" or "decision" broadly enough to include their antonyms, the Court would have to stretch the words' definitions far beyond their ordinary meaning. Yet, no text in § 1252(a)(2)(B)(ii) suggests that Congress intended "action" and "decision" to become hollow vessels capable of holding whatever meaning an agency seeks to give them. *See Trim*, 76 F.4th at 1161 ("[P]ersuasive proof of congressional intent is required before we embrace an idiosyncratic definition." (citation modified)). The Court therefore declines to adopt Defendants' overbroad definitions of "action" and "decision," finding that they run contrary to the plain meaning of the words.

Defendants claim that Supreme Court and Ninth Circuit precedent require the Court to read § 1252(a)(2)(B)(ii) expansively enough to shield USCIS's inaction from judicial review. However, the cited cases are inapposite. Defendants cite *Patel v. Garland*, where the Supreme Court, interpreting 8 U.S.C. § 1252(a)(2)(B)(i), defined "judgment" as encompassing "any and all decisions relating to the granting or denying of discretionary relief." 596 U.S. 328, 337-38 (2022) (citation modified). However, *Patel* involved a petitioner seeking review of an immigration judge's factual determinations regarding whether the petitioner had accidentally checked the wrong box on his initial immigration application. *Id.* at 333-35. By contrast, Plaintiffs here do not seek review of any determination because there is no determination to review. Therefore, the Supreme Court's holding, which barred federal courts from reviewing determinations of fact by the INS because they constituted a "judgment" under § 1252(a)(2)(B)(i), does not apply here. *See id.* at 339. Moreover, "*Patel* neither applied a reading so broad that it flipped the meaning of a word on its head nor instructed [courts] to do so." *Lovo*, 107 F.4th at 210 (alteration in original). Extending *Patel*'s logic to expand the definition of "action" to include inaction is a logical step too far, and nothing in *Patel* compels the Court to read § 1252(a)(2)(B)(ii) in such a manner.

Defendants additionally cite *Zia v. Garland*, where the Ninth Circuit, applying the reasoning of *Patel*, defined "any other decision or action" to include "all determinations made in support of a grant of discretionary relief under subsection (ii)." 112 F.4th 1194, 1200 (9th Cir. 2024). The Ninth Circuit held that the BIA's decision regarding a good faith marriage waiver and

any underlying eligibility determinations in relation to it were discretionary actions stripped from review by § 1252(a)(2)(B)(ii). *Id.* at 1200-01. Like *Patel*, *Zia* involved an affirmative and discretionary agency action, which was not subject to judicial review. Furthermore, the Ninth Circuit's definition of "action" in *Zia*, though expansive, still presupposes agency action, not inaction. *See BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 93 (2006) (finding that the terms "every" and "any" do not "broaden the ordinary meaning of the term 'action'"). Thus, *Zia* does not preclude judicial review in this case because Plaintiffs allege that no action has been taken with respect to their application.[2] Accordingly, § 1252(a)(2)(B)(ii) does not shield agency inaction from judicial review.

**b. Context of the INA**

Defendants appeal to the statutory scheme of the INA, but that scheme only supports the Court's interpretation of § 1252(a)(2)(B)(ii). Defendants argue that 8 U.S.C. § 1255(a) grants USCIS discretion not to act, which necessarily means that § 1252(a)(2)(B)(ii) precludes judicial review over its inaction in this case. Section 1255(a) reads in relevant part that the "status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." However, Defendants' argument would require reading into an affirmative grant far more power than the INA envisions. Though the word "may" confers broad discretion, *Bouarfa v. Mayorkas*, 604 U.S. 6, 13-14 (2024), it does not supersede the statutory scheme itself. The power to grant relief does not empower USCIS to do nothing; it only permits USCIS to grant or to deny applications.

Allowing USCIS to abdicate its duty to adjudicate immigration applications would undermine the INA's statutory framework. The INA requires USCIS to explicitly deny an individual's EB-5 visa application and notify the applicant if the agency believes certain disqualifying conditions have been met. *See, e.g.*, 8 U.S.C. § 1153(b)(5)(N)(iv)(I-II) ("If [USCIS] determines that the approval . . . should be denied . . . pursuant to clause (i) [which details if there

---

[2] Defendants cite *Orlov v. Howard* to argue for a reading of "action" as "any act or series of acts." 523 F. Supp. 2d 30, 35-36 (D.D.C. 2007). However, this proposed definition does not address the fundamental limitation on what "action" can include.

is a concern over national security], [it] shall . . . (I) notify the relevant individual . . . [and] (II) deny or revoke such . . . application. . . ." (alteration in original)). Yet, under Defendants' interpretation of § 1255(a), USCIS could simply do nothing and effectively deny applications without having to provide notice or formally deny them. The Court declines to read § 1255(a) in a way that would render another section of the INA superfluous. *Cf. Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668-69 (2007) (declining to read a statute in a way rendering another section redundant). The more plausible interpretation, which avoids superfluity, is that the discretion to grant relief does not confer the ability to refuse to act.

Therefore, USCIS does not have discretion under the INA to refuse to adjudicate Plaintiffs' applications. It necessarily follows that the Court is not stripped of jurisdiction.

**c. Context of the APA**

The broader statutory scheme governing USCIS, which includes the APA, bolsters the Court's interpretation of § 1252(a)(2)(B)(ii). The APA mandates that each agency, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, . . . *shall* proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). "The word . . . 'shall,' is a mandatory term, unless something about the context in which the word is used indicates otherwise." *Nat. Res. Def. Council, Inc.*, 940 F.3d at 1078 (citation omitted). Consequently, § 555(b) creates a mandatory duty for USCIS to adjudicate applications presented to it within a reasonable time. *See Spencer Enter., Inc. v. United States*, 345 F.3d 683, 691-92 (9th Cir. 2003) (holding that 8 U.S.C. § 1153(a)(5)(A) created a non-discretionary duty to act because it included the word "shall"); *see also Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *8 (N.D. Cal. Feb. 20, 2026) (collecting cases). Interpreting § 1252(a)(2)(B)(ii) to include inaction would inherently contradict this duty. The Court's construction of § 1252(a)(2)(B)(ii) fits the APA's requirement that an agency must conclude every "matter presented" to it.[3]

[3] Plaintiffs also argue that USCIS's own regulations create a mandatory duty to adjudicate. The relevant regulation reads that "the applicant shall be notified of the decision of the director and, if the application is denied, the reasons for denial." 8 C.F.R. § 245.2(a)(5)(i). However, the

Resisting this conclusion, Defendants argue that the APA's mandate does not apply to USCIS. Since the APA is limited "to the extent that – [other] statutes preclude judicial review," 5 U.S.C. § 701(a) (alteration in original), Defendants argue that § 1252(a)(2)(B)(ii) should limit the APA, *Chairez v. Mayorkas*, 168 F.4th 1227, 1233 (9th Cir. 2026). However, to prevail, Defendants must find a statute that defines USCIS's inaction as discretionary and thus precluded from judicial review. Defendants have not done so; therefore, the APA's mandate applies.[4]

Moreover, the Court may look to the purpose and objective of the statutory scheme to determine the extent to which judicial review is precluded. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). The fundamental purpose of USCIS, as created by Congress, is to adjudicate visa petitions and applications. *See* Homeland Security Act, Pub. L. No. 107-296, § 451(b), 116 Stat. 2135 (2002) (detailing the functions transferred from the Commissioner of Immigration and Naturalization to the Director of USCIS). This purpose confirms that the APA provides a basis for judicial review of USCIS's inaction.

Overall, the statutory context does not persuade the Court to adjust its interpretation of § 1252(a)(2)(B)(ii). The APA creates a mandatory duty for USCIS to adjudicate, and the INA does not abrogate that duty or shield it from judicial review.

**d. Policy concerns**

Finally, lacking support in the plain text of the INA or its statutory scheme, Defendants raise policy arguments. They argue that § 1252(a)(2)(B)(ii) should be read expansively because interrogating the distinction between USCIS's action or inaction involves review over discretionary actions barred from review by the statute. *See Singh v. Napolitano*, 710 F. Supp. 2d 123, 132 (D.D.C. 2010) ("[A] review of the Secretary's decision to hold the plaintiff's application in abeyance necessarily entails an indirect review of the Secretary's discretionary authority.");

regulation does not explicitly require anything beyond notice *if* the application is denied. Moreover, "[i]f an agency regulation cannot render a decision discretionary (and thus forbid review), then neither should it render it non-discretionary (and thus permit review)." *Poursina v. USCIS*, 939 F.3d 868, 875 (9th Cir. 2019).

[4] Defendants' claim that § 1252(a)(2)(B)(ii)'s non obstante clause limits the applicability of the APA fails for the same reason.

United States District Court
Northern District of California

*Seydi v. USCIS*, 779 F. Supp. 2d 714, 719 (E.D. Mich. 2011) (same). Such deference to USCIS, however, would violate the presumption of judicial review in this case,[5] *Kucana v. Holder*, 558 U.S. 233, 251 (2010), and would ignore the plain language of § 1252(a)(2)(B)(ii). "By defining the various jurisdictional bars by reference to the other provisions in the INA itself, Congress ensured that it, and only it would limit the federal courts' jurisdiction." *Id.* at 252. Adopting Defendants' expansive interpretation of § 1252(a)(2)(B)(ii) would transfer Congress's power to determine a boundary of federal jurisdiction to the Executive without clear indication it intended to do so. Until Congress amends the law to further limit the scope of judicial review under § 1252(a)(2)(B)(ii), inaction such as USCIS's abdication of adjudication is subject to judicial review.

**2. USCIS's inaction is not a discretionary decision regarding "pace-of-adjudication"**

Defendants claim that their inaction with respect to Plaintiffs' applications is in fact part of a broader policy regarding "pace-of-adjudication" – that is, an affirmative decision to prioritize other applications which is not subject to judicial review. The Ninth Circuit has not addressed whether "pace-of-adjudication" falls under the discretion of USCIS, thus Defendants rely primarily on out-of-circuit authority to support their position. Those cases held that USCIS had discretion regarding "whether and how to adjust [the status of applications]," which meant the court "lack[ed] jurisdiction to review both the decision to put . . . applications on hold *and* the 'inextricably intertwined' process 'prescribed' by the Secretary for reaching that decision." *Geda v. Dir., USCIS*, 126 F.4th 835, 843-44 (3d Cir. 2025) (alteration in original); *see also Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) (discretion includes "actions taken in the course of the decision-making process – including the pace at which that process is undertaken"), *cert. denied*, 145 S. Ct. 1126 (2025); *Thigulla v. Jaddou*, 94 F.4th 770, 776 (8th Cir. 2024); *Kanapuram v. Dir.,*

---

[5] Defendants cite to cases indicating that such a presumption does not apply in the immigration context. *See, e.g.*, *Chairez*, 168 F.4th at 1232. But though the INA limits judicial review, it does not eradicate all review. Therefore, the Court, following *Kucana*, will not interpret § 1252(a)(2)(B)(ii) in a contrived manner to remove *all* judicial review.

*USCIS*, 131 F.4th 1302, 1306-07 (11th Cir. 2025); *Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025).[6]

These cases, though, address the factually distinct scenario of visa retrogression. Visa retrogression occurs when demand for a visa category causes the category to become over-subscribed, in which case USCIS pushes back the cut-off date for when applicants can be approved. *Kale*, 139 F.4th at 333. USCIS created an internal policy to hold in abeyance the applications affected by visa retrogression. *Id*. Thus, unlike the case before the Court, visa retrogression involves a clear affirmative step: the recategorization of applications impacted by visa retrogression. Here, Defendants have not identified any similar policy that explains the delay in adjudicating Plaintiffs' application, nor have they taken any steps on Plaintiffs' applications. Compl. ¶ 45. Therefore, the visa-retrogression cases provide no support for Defendants' position.

Defendants argue that the language from the visa-retrogression cases should be applied broadly, including to the case at hand, despite the factual disparity. However, the cases limit themselves to just the specifics of the Adjudication Hold Policy. *See Kale*, 139 F.4th at 335 ("[T]his case differs from *Lovo* because it is not *merely a case of agency inaction*." (emphasis added)); *Thigulla*, 94 F.4th at 776 (determining only whether USCIS "acted within [its] discretionary, statutory authority by implementing and executing the Adjudication Hold Policy" (alteration in original)); *Cheejati*, 106 F.4th at 395 (noting that "the retrogression hold policies are effectuated through discrete acts by DOS and USCIS"). These cases neither addressed a scenario of pure agency inaction nor generally adopted USCIS's inaction as a discretionary action; as such, they are unpersuasive.

Construing USCIS's inaction as a determination about pace-of-adjudication would improperly expand the careful limits on discretion set by § 1252(a)(2)(B)(ii). An agency, under this approach, could shroud its refusal to perform its mandatory duties in a cloak of non-

---

[6] Defendants cite *Khachutorov v. Britten* as persuasive authority within the Ninth Circuit. 792 F. Supp. 3d 1106, 1114 (C.D. Cal. 2025). However, the Court respectfully does not find *Khachutorov* persuasive. *Khachutorov* involved a distinct factual scenario where the plaintiffs had already been interviewed before USCIS allegedly stopped acting, *id*. at 1110, and the court applied the out-of-circuit precedents in the manner this Court rejected above, *id*. at 1114.

reviewability by citing an internal process or regulation. Doing so would expand § 1252(a)(2)(B)(ii) beyond just actions under an agency's explicit statutory discretion. *See Kucana*, 558 U.S. at 252 (noting that an agency cannot have "a free hand to shelter its own decisions" from review). "Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted." *Id.*

***

For the aforementioned reasons, the Court finds that it has subject matter jurisdiction. Defendants' claim that § 1252(a)(2)(B)(ii) strips the Court of jurisdiction does not pass muster under the plain language of the statute. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

**B. Plaintiffs Fail to Identify a Due Process Right**

Plaintiffs allege that they hold a due process right in having USCIS adjudicate their application, regardless of the outcome. The Fifth Amendment states, in relevant part, that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." U.S. Const., amend. V, § 1. To bring a claim under the Fifth Amendment, Plaintiffs must allege "a liberty or property interest protected by the Constitution." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000). A constitutionally protected property right requires an allegation that Plaintiffs "have more than an abstract need or desire . . . or a unilateral expectation of [a benefit]. [They] must have, instead, a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (alteration in original). A legitimate claim of entitlement does not exist if "government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

The Constitution does not protect an interest in adjudication of an EB-5 visa because the constitutional rights granted in relation to immigration benefits are minimal. In *Department of State v. Muñoz*, the Supreme Court recognized that "Congress can use its authority over immigration to prioritize the unity of the immigrant family. . . . But the Constitution does not *require* this result." 602 U.S. 899, 916 (2024). Though *Muñoz* addressed liberty interests, not property interests, it reflects the Supreme Court's reluctance to extend constitutional protections to

immigration benefits. Although USCIS has a duty to adjudicate the applications under § 1252(a)(2)(B)(ii), there is no constitutional right to receive adjudication at a particular time.[7]

Plaintiffs argue that because there is a statutory duty to adjudicate, there exists a property interest in receiving adjudication.[8] However, the authority Plaintiffs cite for this proposition does not apply to agency adjudication. Plaintiffs cite *Logan v. Zimmerman Brush Co.*, where the Supreme Court found a due process property right to receive adjudication. 455 U.S. 422, 432 (1982). In *Logan*, the Illinois Supreme Court found that the plaintiff's due process rights had not been violated even though the state agency's error "*extinguish[ed] his cause of action*." *Id*. at 427 (emphasis added). In finding that a property right had been violated, the United States Supreme Court emphasized that the plaintiff lacked any other means to bring a claim. *Id*. at 433-34. Here, by contrast, Plaintiffs' claims have not been fully extinguished because the APA offers a clear avenue for relief. Therefore, *Logan* does not guarantee Plaintiffs a protected property right.

Plaintiffs additionally rely upon *Foss v. National Marine Fisheries Service*, a Ninth Circuit case which stated that "applicants have a property interest protectible under the Due Process Clause when the regulations establishing entitlement to the benefit are . . . mandatory in nature." 161 F.3d 584, 588 (9th Cir. 1998). However, *Foss*, which revolved around a fishing permit, found that the permit constituted property because it was "subject to sale, transfer, lease, inheritance, and division as to marital property in a dissolution." *Id*. A right to adjudication brings along no such benefits. Therefore, *Foss* is inapposite to Plaintiffs' situation.[9]

---

[7] Plaintiffs also cite *Ching v. Mayorkas*, where the Ninth Circuit held that there existed a property right to a hearing over eligibility for a I-130 visa petition. 725 F.3d 1149, 1155-56 (9th Cir. 2013). However, unlike the case at hand, an I-130 visa petition must be approved if a plaintiff is eligible, thereby making it a non-discretionary entitlement and giving rise to a property right. *Id*.

[8] Counsel for Plaintiffs highlighted the high cost paid by Plaintiffs as further evidence of the existence of a property right. Though the Court understands that frustration may arise from such payment without action, it declines to construe a property right for certain immigration applicants based on their financial ability to pay more for a visa.

[9] At the motion hearing, Plaintiffs cited *Gogate v. Edlow*, in which the court found that Form I-485 applicants held a due process property right. No. 25-cv-02558-DOC-KES, 2026 WL 1658512, at *6 (C.D. Cal. Jun. 5, 2026). However, because *Gogate* predicated its argument on the logic of *Foss*, the Court respectfully declines to follow *Gogate*.

Because there does not exist a cognizable property interest under the Due Process Clause, Plaintiffs cannot state a claim.[10] The Court thus concludes that the due process claim should be dismissed with prejudice and without leave to amend. In making this determination, the Court considers factors such as "undue delay, bad faith or dilatory motive on the part of the [Plaintiff], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court finds that leave to amend would be futile because Plaintiffs' due process claim is legally deficient, and no amendment could cure the deficiency. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) ("If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile."); *Lamoon, Inc. v. Lamour Nail Prods., Inc.*, 373 F. App'x 795, 797 (9th Cir. 2010) (When a plaintiff's "claims have underlying legal deficiencies that cannot be cured, amendment would be futile.").

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' unopposed motion for leave to file a sur-reply, ECF No. 11, is GRANTED.
2. Plaintiffs' due process claim is DISMISSED without leave to amend.
3. Defendants' motion to dismiss is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: August 14, 2026

Eumi K. Lee
United States District Judge

[10] For this reason, the Court does not address the *Mathews v. Eldridge* factors.